## Krimm v. Devlin, Appellant.

*Mortgage—Defense—Contract.*

In an action upon a mortgage it appeared that prior to the date of the mortgage, the mortgagee had contracted to furnish mill work to the mortgagor. The plaintiff, a manufacturing company, agreed with the mortgagee to manufacture and deliver to him the mill work. The mortgagor defaulted in the payments to the mortgagee, and the latter to the plaintiff. The three parties came together and entered into an agreement in writing by which the mortgagor agreed to give the mortgage in suit to the mortgagee, and the latter agreed to assign it forthwith to plaintiff. The mortgagor also agreed to give security for the balance of mill work to be furnished under the original contract between the mortgagee and himself. The plaintiff agreed to discontinue a suit which it had begun against the mortgagee. *Held*, that under the agreement the plaintiff was under no contractual obligation to supply the balance of mill work to the mortgagor, and that a failure to do so was no defense to the mortgage.

Argued March 25, 1903. Appeal, No. 31, Jan. T., 1903, by

defendant, from order of C. P. No. 5, Phila. Co., Sept. T., 1902, No. 3319, making absolute a rule for judgment for want of a sufficient affidavit of defense in case of Charles R. Krimm, Assignee of John Parker, v. John Devlin, Mortgagor. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Scire facias sur mortgage.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that defendant claimed as a defense to the suit the failure of the Williamsport Planing Mill Company, the real owner of the mortgage, Charles R. Krimm being its treasurer, to deliver within sixty days certain mill work under an agreement in writing, which was as follows:

" This agreement made this nineteenth day of March, A. D. 1901, between Williamsport Planing Mill Company, Limited (hereinafter called Planing Company), of the one part; John Parker of the second part and John Devlin of the third part.

" Whereas, the said Planing Company having agreed to furnish lumber and mill work to said Parker to be by him furnished to the said John Devlin, under an agreement made between Parker and Devlin for furnishing such lumber and mill work to operation of said Devlin, west side of Forty-eighth street; east side of Fiftieth street; east and west side of St. Barnard and Fallon streets, in the city of Philadelphia.

" And whereas there is a balance of eight thousand five hundred dollars due by Devlin to Parker, and by him due to the Planing Company for lumber and mill work heretofore furnished, and it is desired to pay for the same in part and secure payment of the balance thereof; and it is also further desired by the said parties, to provide for the payment for the balance of the lumber and mill work yet to be delivered under the contract between Parker and Devlin as above mentioned.

" Now therefore this agreement witnesseth: That in consideration of the premises and of mutual covenants, the said parties have agreed to and with each other as follows:

" First. As payment on account of the above balance of eight thousand five hundred dollars now due, said John Devlin will make, execute and deliver to said Parker his bond and mortgage

for five thousand (5,000) dollars bearing even date herewith, payable within one year from date with six per cent (6 %) interest, to be secured upon premises Nos. 1432 and 1436 Wolf street, Philadelphia, each subject to a ground rent of twenty-five hundred dollars ($2,500) issuing thereout, and forty-eight (48) lots of ground situate on Packer, Mole and Curtin streets, in the city of Philadelphia.

" It is further agreed that said Parker shall forthwith assign said bond and mortgage for five thousand dollars ($5,000) unto said Planing Company, in payment of five thousand dollars ($5,000) of the above mentioned balance due to said company for lumber and mill work as aforesaid.

" Second. Said John Devlin will also, on the day of the date hereof, simultaneously herewith, execute and deliver unto the said John Parker a second bond and mortgage for thirty-five hundred dollars, secured upon the above described houses and lots of ground, and said Parker will forthwith assign said second mortgage unto said Planing Company; said bond and mortgage shall also be payable within one year, with interest at 6%, and shall be held by said Planing Company as collateral security for the payment of the above mentioned sum of thirty-five hundred ($3,500) dollars.  Accompanying the said second mortgage, said John Devlin shall give one or more promissory notes, aggregating the amount thereof, to said Parker, who shall endorse the same to the said Planing Company; said notes shall be drawn at four months and renewed twice upon payment of discount, any amount paid on account thereof to be deducted before renewal.  All sash blinds, shutters, bay windows, bay window casings and show sills to be delivered within fifteen days after the consummation of this agreement, and the balance as ordered, so that the whole thereof shall be delivered within sixty days after such consummation.

" Third. The said John Devlin, for the balance of lumber and mill work to be furnished and delivered under the contract made between Parker and himself as aforesaid, will make provision with one of the trust companies in the city of Philadelphia for the payment of such lumber and mill work, in cash, as the same is delivered.

" Fourth. Upon the day of the date hereof the said Parker will give his bond and mortgage for six thousand dollars ($6,000),

payable within one year, with interest at five per cent (5%) per annum, secured upon planing mill and lot of ground thereunto belonging, situate at the southeast corner of Sixteenth and Fitzwater streets in the city of Philadelphia, subject to a ground rent issuing thereout, the principal whereof is about six thousand dollars ($6,000) to be held by the said Planing Mill Company as security for the payment of the balance of thirty-five hundred dollars due them for lumber and mill work furnished to the day of the date hereof, upon payment of which balance the said bond and mortgage as well as the above mentioned second mortgage given by the said Devlin, shall be forthwith satisfied of record by the said Planing Mill Company. It is further agreed that the above mentioned bonds and mortgages shall be prepared and accompanied by title insurance policies at the expense of the said John Devlin, and the said $6,000 mortgage shall be accompanied by fire insurance in the sum of $4,000.

" It is further agreed, that the suit now instituted by the planing company against the said Parker, in common pleas court No. 5, of Philadelphia county, as of March term, 1901, No. 173, shall be forthwith discontinued of record upon the delivery of the bonds and mortgages provided for in the above agreement; the costs of suit to be paid by the said John Devlin."

The court made absolute a rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*F. S. Cantrell, Jr.*, with him *F. S. Cantrell*, for appellant.

*Alex. Simpson, Jr.*, with him *Carroll R. Williams*, for appellee.

OPINION BY MR. JUSTICE FELL, July 9, 1902:

This appeal is from an order of the court making absolute a rule for judgment for want of a sufficient affidavit of defense in an action on a mortgage. The defense set up is based on a written agreement made at the time the mortgage was assigned to the plaintiff, who holds it as treasurer of the Williamsport Planing Mill Company. It is conceded that unless by the terms of this agreement the mill company was bound to de-

liver building materials directly to the defendant, there is no valid defense to the action.

The circumstances under which the agreement was made, as shown by its recitals and the averments of the affidavit, were these : The mill company had contracted with John Parker to furnish him with a large amount of lumber and mill work, and he had contracted with the defendant to furnish the lumber and mill work for eighty houses that the defendant was building. When a part had been furnished to the defendant, he defaulted in his payments to Parker, and Parker defaulted in his to the mill company. The latter refused to furnish more material to Parker unless paid for that which had been fur‌nished, and secured for the balance. The defendant owed Parker $8,500, and Parker owed this amount to the company. Suit had been brought against Parker, and liens filed against the houses, and the operation was at a standstill.

The parties then came together and agreed with each other as follows : First, that the defendant should execute a mortgage to Parker for $5,000 in part payment of the balance due him, and that Parker should assign this mortgage to the company on account of his indebtedness to it. This is the mortgage in suit, and it was accepted by the company in payment as far as it went. Second, that the defendant should execute to Parker a second mortgage for $3,500, which he was to assign to the company as collateral security for the balance due. Promissory notes were to be given with the mortgage by the defendant to Parker and to be indorsed by him to the company. Third, that as additional collateral for the payment of the balance of $3,500, Parker was to give his own mortgage for $6,000 to the company. It was further agreed that the defendant should arrange with a trust company to secure the payment in cash for materials delivered thereafter under the contract between himself and Parker; that the company should discontinue the proceedings it had commenced against Parker for the collection of the amount due by him, the costs of the suit to be paid by the defendant. The dispute arises over a part of the agreement found in the article by which provision is made to secure the balance of the debt then due by Parker to the company, which is as follows : " All sash, blinds, shutters, bay windows, bay window

cases and show stills to be delivered within fifteen days after the consummation of this agreement, and the balance as ordered, so that the whole thereof shall be delivered within sixty days after such consummation.

Unless this part of the agreement gave rise to a direct obligation on the part of the company to the defendant, he has no standing to defend this action because of loss resulting from delay in delivery. The agreement made no change in the relation in which the parties had stood to each other. The defendant was in default in not having paid Parker. He was unable to pay, liens had been placed on his houses, and work was stopped. Unless the company could be induced to carry out its contract with Parker notwithstanding its breach, the disaster would be complete. The company made a concession by accepting a mortgage in part payment, and security from Parker for the balance due by him and to become due ; and it agreed to resume the delivery of materials. The prior agreement between the company and Parker was not abrogated. Deliveries were not to be made by the company to the defendant, and he assumed no liability to it. It could not have maintained an action against him for the price of materials furnished, and it became in no way liable to him. The parties stood precisely as they had stood before with two independent contracts. The only change affected by the agreement was as to the manner and time of payment. We find nothing in it nor in the averments contained in the affidavits that sustains the contention that there was a contractual relation between the company and the defendant as to future deliveries.

The judgment is affirmed.